## HARTFORD ACCIDENT & INDEMNITY CO. ET AL. *v.* DELTA & PINE LAND CO.

No. 650. Argued March 15, 1934.—Decided April 9, 1934.

*Mr. Wm. M. Hall* submitted for appellants.

*Mr. Garner W. Green,* with whom *Messrs. Oscar John-ston* and *Marcellus Green* were on the brief, for appellee.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This was an action instituted in a circuit court of Mississippi by Delta & Pine Land Company, a corporation of that state with its principal place of business therein, against Hartford Accident & Indemnity Company, a corporation of Connecticut, having its principal place of business in Hartford in that state. The declaration alleges that on or about January 1, 1928, the plaintiff ap-

plied to the defendant for a fidelity bond and paid the agreed premiums therefor, and the defendant executed and delivered to the plaintiff such a bond, whereby it bound itself to pay the plaintiff, within sixty days after satisfactory proof, pecuniary loss sustained by the plaintiff through fraud or dishonesty or wilful misapplication by any employee " in any position, anywhere," from the time that the name of such employee should be placed upon a schedule attached to the bond to and including the termination of the suretyship for such employee by his dismissal, retirement from service, discovery of loss, or cancellation of the bond by the parties. It is alleged that the name of H. H. Harris, as treasurer of the plaintiff appears upon the schedule, and that the amount of coverage for him is $25,000. Sundry defalcations by Harris between May 9, 1929, and December 20, 1929, totaling $2703.79, are set forth, all of which and the resulting loss occurred in the first judicial district of Bolivar county, Mississippi. The further material matters charged are that the defendant throughout all the times mentioned in the declaration, and ever since, was and now is duly qualified and licensed to do business in Mississippi; that the dishonest acts of Harris were discovered on or about May 20, 1931, immediate notice given to the defendant at its home office, and affirmative proof of loss under oath, with full particulars, filed with the defendant at its home office within three months after the discovery. The declaration in conclusion asserts compliance by plaintiff with all the terms of the bond, and refusal of the defendant, though requested, to make payment of the sum demanded. Annexed to the declaration are copies of the bond and the supplementary schedules forming part of it.

The defendant's plea was, in substance: the plaintiff, before and at the date of the contract of suretyship, was doing business in Tennessee, with its principal office at Memphis in that state, and defendant also was then and

is now doing business in Tennessee, having an agency at Memphis; plaintiff, through its office at Memphis, applied to defendant through its agency there for the bond, rider and schedules containing the name of the defaulting employee, Harris, constituting the contract of suretyship; defendant through its agency at Memphis executed and delivered the bond and schedules to plaintiff at its office in that city; the contract is a Tennessee contract and governed by the laws of Tennessee, and full faith and credit must be given to it in the courts of Mississippi in accordance with the requirements of Article IV, § 1, Article I, § 10, and § 1 of the 14th Amendment of the Constitution of the United States; there was not at the time of delivery of the contract, and is not now, any statute in Tennessee prohibiting or invalidating the condition or limitation in the contract to the effect that any claim thereunder must be duly made upon the defendant as surety within fifteen months after the termination of the suretyship for the defaulting employee, and the plaintiff did not make claim upon the defendant for the loss within fifteen months after the termination of the suretyship for Harris, as the contract was cancelled and terminated December 31, 1929, and the plaintiff made no claim until June 22, 1931.

To this plea the plaintiff demurred, assigning these causes of demurrer: (1) the construction and validity of the provision of the contract relied upon in the plea is to be determined by the laws of Mississippi, and not by the laws of Tennessee; (2) the statute of limitations of the state where suit is brought is the statute which governs the time for bringing this action, and the provision in the contract requiring that any claim thereunder must be made upon the defendant within fifteen months after the termination of the suretyship for the defaulting employee is in violation of § 2294 of the Mississippi Code of 1930, and in violation of the public policy of Mississippi, and

its courts are not required to give full faith and credit to this provision of the contract by Article IV, § 1, Article I, § 10, or § 1 of the 14th Amendment of the Constitution.

The cause came on for hearing upon the pleadings, and the court sustained the demurrer. The defendant declined to plead further; whereupon judgment was entered by default in favor of the plaintiff, a jury was impaneled and assessed damages at the amount claimed, and final judgment was accordingly entered.

Upon appeal by the defendant the Supreme Court of Mississippi affirmed the judgment. Conceding that under the decisions of the Supreme Court of Tennessee the provision for notice within fifteen months of the termination of the suretyship is a valid limitation of liability and not a limitation of action, the court said the converse is true in Mississippi. Although the bond was executed and delivered and the agreement consummated. in Tennessee, where the plaintiff and the defendant's agent had their respective offices, and where, in the absence of proof of a contrary intent, the contract was to be performed, the court concluded that the statutes of Mississippi made the instrument a Mississippi contract, and annulled the contractual limitation of the time for giving of notice of claim.

The Mississippi statutes relied upon were the following:

"A contract of insurance is an agreement by which one party for a consideration promises to pay money or its equivalent, or to do some act of value to the assured, upon the destruction, loss or injury of something in which the assured or other party has an interest, as an indemnity therefor; and it shall be unlawful for any company to make any contract of insurance upon, or concerning any property or interest or lives in this state, or with any resident thereof; or for any person as insurance agent or insurance broker to make, negotiate, solicit, or in any manner aid in the transaction of such insurance unless and

except as authorized under the provisions of this chapter. All contracts of insurance on property, lives or interests in this state shall be deemed to be made therein." (§ 5131, Mississippi Code, 1930.)

" The limitations prescribed in this chapter shall not be changed in any way whatsoever by contract between parties, and any change in such limitations made by any contract stipulation whatsoever shall be absolutely null and void; the object of this statute being to make the period of limitations for the various causes of action the same for all litigants." (§ 2294, Mississippi Code, 1930.)

The state Supreme Court said:

" But clearly under section 5131, Code 1930, defining insurance, this indemnity bond is a contract of insurance within the purview of that statute; and, further, it being expressly provided therein that all contracts of insurance on property, lives, or interests in this state shall be deemed to be made therein, in our judgment, makes the contract herein under review a Mississippi contract and solvable under the laws of this state. The contract here provided or stipulated that the appellee should be indemnified from loss by the defalcation of H. H. Harris in any position anywhere, and when he, the employee and the insured herein, removed to Mississippi and there defaulted, so far as the appellee is concerned its interest was insured or indemnified by the appellant in Mississippi, and, under the provision quoted from the above statute, became operative, and this state is obligated to enforce it, as a Mississippi contract, although it contained all the elements necessary to make it a Tennessee contract, but for the statute."

" When the statute declares that such a contract shall be deemed to be made in this state, it means that the conflict of law between the two states is eliminated, and

thereby, . . . a contract for fifteen months' notice was a limitation of the action unenforceable as such in this state."

The Mississippi statutes, so construed, deprive the appellant of due process of law. A state may limit or prohibit the making of certain contracts within its own territory (*Hooper* v. *California,* 155 U.S. 648; *Orient Insurance Co.* v. *Daggs,* 172 U.S. 557, 565-6; *New York Life Ins. Co.* v. *Cravens,* 178 U.S. 389, 398-9); but it cannot extend the effect of its laws beyond its borders so as to destroy or impair the right of citizens of other states to make a contract not operative within its jurisdiction, and lawful where made. *New York Life Ins. Co.* v. *Head,* 234 U.S. 149; *Aetna Life Ins. Co.* v. *Dunken,* 266 U.S. 389, 399. Nor may it in an action based upon such a contract enlarge the obligations of the parties to accord with every local statutory policy solely upon the ground that one of the parties is its own citizen. *Home Insurance Co.* v. *Dick,* 281 U.S. 397, 407-8.

It is urged, however, that in this case the interest insured was in Mississippi when the obligation to indemnify the appellee matured, and it was appellant's duty to make payment there; and these facts justify the state in enlarging the appellant's obligation beyond that stipulated in the bond, to accord with local public policy. The liability was for the payment of money only, and was conditioned upon three events,—loss under the policy, notice to the appellant at its home office, and presentation of claim within fifteen months of the termination of the suretyship. All of these conditions were of substantial importance, all were lawful in Tennessee, and all go to the obligation of the contract. It is true the bond contemplated that the employee whose faithfulness was guaranteed might be in any state. He was in fact in Mississippi at the date of loss, as were both obligor and obligee. The contract be-

ing a Tennessee contract and lawful in that state, could Mississippi, without deprivation of due process, enlarge the appellant's obligations by reason of the state's alleged interest in the transaction? We think not. Conceding that ordinarily a state may prohibit performance within its borders even of a contract validly made elsewhere, if the performance would violate its laws (*Home Insurance Co.* v. *Dick, supra,* p. 408), it may not, on grounds of policy, ignore a right which has lawfully vested elsewhere, if, as here, the interest of the forum has but slight connection with the substance of the contract obligations. Here performance at most involved only the casual payment of money in Mississippi. In such a case the question ought to be regarded as a domestic one to be settled by the law of the state where the contract was made. A legislative policy which attempts to draw to the state of the forum control over the obligations of contracts elsewhere validly consummated and to convert them for all purposes into contracts of the forum regardless of the relative importance of the interests of the forum as contrasted with those created at the place of the contract, conflicts with the guaranties of the Fourteenth Amendment. *Aetna Life Ins. Co.* v. *Dunken, supra; Home Insurance Co.* v. *Dick, supra.* Cases may occur in which enforcement of a contract as made outside a state may be so repugnant to its vital interests as to justify enforcement in a different manner. Compare *Bond* v. *Hume,* 243 U.S. 15, 22. But clearly this is not such a case.

Our conclusion renders unnecessary a consideration of the claims made under the full faith and credit and contract clauses of the federal constitution.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*